STERNBERG DREDGING COMPANY v. DAWSON.

Opinion delivered April 21, 1924.

1. DRAINS—ALTERATION OF PLANS—EFFECT ON SUBCONTRACT.—Where a contract with a drainage district authorized the district to change the location of the drain, and the plans and specifications of the district were made part of a subcontract for clearing the right-of-way for the drain, a change of location during the progress of the work did not destroy the subject-matter of the original contract with the district nor relieve the contractor from carrying out the terms of the subcontract.

2. CONTRACT—QUESTIONS FOR JURY.—In an action for breach of a contract, held under the evidence that it was a question of fact for the jury whether plaintiff either abandoned the contract or acquiesced in its abandonment by defendant.

3. ACCORD AND SATISFACTION—JURY QUESTION.—In an action for breach of a contract, whether there had been an accord and satisfaction held for the jury.

4. TRIAL—INSTRUCTION SUBMITTING ISSUE NOT RAISED.—In an action against a drainage contractor for abandoning its subcontract with plaintiff and reletting same to another, where the defendant's contract with the drainage district provided for changes in location, an instruction which submitted the issue as to defendant's liability to plaintiff because it could not allow him to complete the drain as it originally planned was erroneous where no such issue was raised by the pleadings, or by the evidence adduced to sustain them.

Appeal from Poinsett Circuit Court; *W. W. Bandy,* Judge; reversed.

*J. Brinkerhoff, H. P. Maddox* and *Costen & Harrison,* for appellants.

1. Both the plaintiff and the defendants were charged with knowledge of the provision in § 7 of the act, No. 193, Acts 1917, creating the district, and it was clearly their intention to contract with reference thereto. The action of the commissioners, therefore, in abandoning Improvement No. 59 had the effect to destroy the subject-matter of plaintiff's contract, and the district's obligations to the defendants, as well as that of the latter to the plaintiff, were at an end. 6 R. C. L. 1005, § 369; 13 R. C. L. 643, § 718; 9 Ark. 463; 124 Ark. 90, 101-102.

2. The acceptance of the check for $1,044.71 transmitted with the letter of April 13, 1921, and the voucher and statement accompanying the same that the check was in full and final settlement, constituted an accord and satisfaction. 148 Ark. 512.

3. The court's instruction to the jury, at the plaintiff's request, with respect to the uncompleted portion of the original Improvement No. 59, amounted to an amendment introducing a new cause of action, which was not permissible. 75 Ark. 465; 109 Ark. 206; 124 Ark. 206; 132 Ark. 368.

*John W. Scobey* and *Gautney & Dudley,* for appellee.

1. Appellant states a correct proposition of law, viz: that in contracts wherein the performance depends on the continued existence of a given person or thing, a condition is implied that the impossibility arising from the perishing of the person or thing excuses the performance; but, where the contract provides that changes may be made, or where there is no such provision, and the change is merely in the route or location, this does not excuse performance, and is not a defense to a suit for breach of the contract. 234 Fed. 817, L. R. A., 1917A, 648; 61 Ark. 312.

2. There was no accord and satisfaction. The mere payment of a debt that is past due does not absolve one from the performance of a contract that is unfinished. There must be a consideration.

WOOD, J. Drainage District No. 7 of Poinsett County, Arkansas, was created by act 193 of the Acts of the General Assembly of 1917. The directors of the district entered into a contract with the appellants for the construction of the improvement. The appellants, in turn, on September 14, 1920, entered into a contract with the appellee and one Stevenson, to clear the right-of-way for what is designated as Improvement No. 59 of District No. 7 of Poinsett County. Stevenson later transferred his interest to the appellee. The consideration to be paid the appellee was $75 per acre, payment to be made on monthly estimates of work done, which were to be furnished by the engineers of the district. Appellee was to do the work according to the specifications contained in the contract. The contract (*inter alia*) contained the following provision: "It is understood and agreed that the plans and specifications of Drainage District No. 7 pertaining to the right-of-way clearing for said levee work shall be made a part of this agreement as if hereto attached and herein recited."

The original Improvement No. 59, as shown by the plat thereof prepared by the engineer of the district, contemplated the construction of a ditch from the east line of section 30, township 12 north, range 7 east, thence in a southwesterly direction through section 30, township 12 N., R. 7 E., and section 25 to near the center on the south line of section 26, T. 12 N., R. 6 E.; thence in a northwesterly direction through sections 26, 27, 22, 15, 16, 9 and 4, in T. 12 N., R. 6 E., to the north boundary of Poinsett County. On the 23rd of November, 1920, appellee agreed to release to the appellants the contract for clearing beginning on the south line of section 15, T. 12 N., R. 6 E., running north to the county line. The appellee proceeded with the work under his contract until about the 18th of February, 1921, when he received notice from the appellants to discontinue the work, as the district had ordered it shut down, or changed its location. Thereafter, some time between this date and the first of the year 1922, the plans of the district were changed so

as to provide for the construction of a ditch from the east line of section 30, T. 12 N., R. 7 E., thence in a southwesterly direction to a point near the southwest corner of section 25, T. 12 N., R. 6 E.; thence north on the west section line of section 25 to the northwest corner, and thence northeasterly across section 24 to a point about a quarter of a mile west of the east line of section 13, T. 12 N., R. 6 E.; thence north on a straight line through sections 13, 12 and 1 to the county line.

Before the last change of plans was adopted, appellee had cleared about 114 acres of the right-of-way, for which he had been paid. After the plans were changed as indicated, appellee, on January 13, 1922, received from the appellants a letter in which they inquired of the appellee if he was interested in clearing the right-of-way of Improvement No. 59, and offering to pay him $50 an acre for clearing the right-of-way according to the plans and specifications of District No. 7, and stating that this offer was subject to prior acceptance by other right-of-way contractors who were bidding on the work, and also stated that, inasmuch as the appellee was in close proximity to the work and had plenty of teams and force of men, appellants believed that the price would be very attractive to the appellee and enable him to make a reasonable profit on the work. Appellee, in reply to this letter, told the appellants that he was ready to comply with his contract; that he already had a contract with the appellants, and was ready to proceed with it. The appellants, in answer to appellee's letter, stated that they considered the old contract covering the right-of-way clearing on Improvement 59 null and void; that they had settled with appellee in full for the work which he had done, and were then working on a change of plans, and could not consider the old contract as having any connection with the clearing to be done on the new location of Improvement No. 59, and advising appellee that they had let the work to another party.

Appellee instituted this action against the appellants, and alleged that appellants had abandoned their

contract with him and had relet the work of clearing the right-of-way of Improvement No. 59 to other parties; that, at the time appellants abandoned their contract, there were 125 acres of right-of-way still to be cleared, which appellants had relet at the sum of $50 per acre. Appellee set up that he was damaged by reason of such breach of contract on the part of the appellants in the sum of $5,000, for which he prayed judgment.

The appellants answered, denying breach of the contract on their part, and admitted that they had let a new contract for the clearing of approximately 125 acres to other parties at $50 per acre. They admitted that they had entered into the original contract with the appellee as claimed by him, but alleged that the appellants had been notified that there had been a change in the plans of the District No. 7 whereby Improvement No. 59 of such district as originally planned was to be changed to a new location as shown on the new plans and specifications and plat prepared by the engineers of the district; that the new plans provided for an entirely different amount and character of right-of-way work from that done under the first plan and original contract; that, immediately upon the change of plans by the district, the appellee was notified by the appellants, and they requested him to bid on the work as relocated, and enter into a new contract, all of which appellee did not do, and therefore appellants let the contract for the new work to other parties. The appellants further set up that, by reason of the change of the plans on the part of the district, appellants' original contracts with the district and with the appellee for the clearing of the right-of-way were abrogated. Appellants further set up that they had made final settlement with the appellee for all work and labor done by him under their contract, and had paid in full for such work, and that such settlement was in the nature of an accord and satisfaction of all claims of the appellee against the appellants.

The appellants filed a cross-action against the appellee for damages growing out of an alleged wrongful

attachment. The appellee denied the allegations of the cross-action. In the attachment proceedings the appellants executed a bond and had the attached property released.

The above are the issues, so far as it is necessary to set them forth. In addition to the facts already stated, which are undisputed, the appellee testified, in regard to the alleged settlement with the appellants, that they paid appellee what they claimed was a legitimate estimate on what he had done. They paid a percentage on what they said was done. There were about ten acres on which nothing had been done. There were approximately four miles difference between the termination of the old right-of-way and the new right-of-way of Improvement No. 59. It would probably be around two miles apart at the point where the right-of-way turns in a northeasterly direction. Appellee was trying for about two months to get appellants to settle for his work done on Improvement No. 59. They would not settle until they got a settlement with the district. That was in April of 1921. The work done in February was not settled for then. Appellee did not say anything to the appellants in effect that the settlement then had was a completion of the contract, or that he had abandoned his contract. He did not have anything of that kind in his mind, and did not know that such was the contention of the appellants until he got their letter in January, 1922. The check that the appellee received when he made the settlement was proper and correct for what the appellants were due him at that time. The amount of the check was $1,044.71, inclosed in a letter of April 13, 1921, as follows: "We inclose herewith our check for $1,044.71, together with voucher and statement covering right-of-way clearing by you from station O to station 236 on Improvement No. 59. This is the final payment on this work. Kindly acknowledge receipt of the inclosed voucher and return to us by first mail. * * * The statement inclosed covering right-of-way clearing on Improvement No. 59 is as rendered by our Mr. Russell, who went

over this work March 25, this being the exact condition in which he found the right-of-way." The voucher inclosed showed the amount due the appellee was $1,044.71, and concluded as follows: "Received of Sternberg Dredging Company $1,044.71 in full settlement of the above." On the same date the appellants wrote the appellee, stating, "We wish to advise that the district has not yet settled with us for right-of-way clearing on Improvement No. 59 covering the amount of work performed by you. However, we have reasonable assurance that they will do so in the near future."

Appellee further testified that, if appellants had complied with the optional contract for the release of the right-of-way which the appellee had given on a portion of the original route of Improvement No. 59, it would have left very little to be done under his contract, but that the optional contract on which the release by the appellee was based was never complied with by the appellants, and hence the appellee was not excluding from his claim the three miles of right-of-way which he had agreed to release. At the time the work was suspended by the appellants in 1921, wages had dropped to a point where, if the appellee had been allowed to continue his contract, he would have made money.

One of the witnesses for the appellants testified that he heard a conversation in March between Sternberg and the appellee, in which Sternberg stated that, when he got back to the office, he would send appellee a check for No. 59 and said, "This will be all you will get on Improvement No. 59, which will be a final settlement." Another witness testified that appellee, in this conversation, asked the engineer to give him the best estimate he could, as it was a final settlement. There was testimony tending to show that the new location of Improvement No. 59 was adopted by the commissioners of the district the first Tuesday in March, 1921.

Sternberg testified for the appellants that, at the time the contract with the appellee for the clearing of the right-of-way was executed, the plans filed by the dis-

trict showed the correct location of the route. The appellants received notice from the district February 17, 1921, to discontinue the work on Improvement No. 59 and other improvements, and appellants notified the contractors. Witness saw appellee on March 19, 1921. He was asking witness for a settlement for the work done on Improvement No. 59. Witness told him that his work had not been checked up, and witness didn't know what to pay him; that witness would have his work checked up in a day or two by their right-of-way man, which they did on March 21, 1921. In that conversation witness told the appellee that, when their right-of-way man got up his statement, witness would render appellee a complete and final settlement on the work he had done, and that was agreed upon, and also told appellee if Improvement No. 59 was ever revived or relocated witness would be glad to enter into a contract with appellee. Appellee cleared 114 acres and left uncleared under his contract 9.37 acres. The witness could not say how many acres were in the original contract. Witness offered to make a new contract with the appellee after improvement had been relocated, but he would not bid on it; said he already had a contract for it. From the time the work on Improvement No. 59 was discontinued until appellants got appellee's letter in 1922, he had never expressed any dissatisfaction over the settlement. The appellants did not obtain a new contract from the district after Improvement No. 59 had been relocated. It was not necessary for appellants to do so, because, under the original contract, the district reserved the right to move the location four miles west, and appellants were receiving the same price for the work as relocated as the contract called for before the relocation.

The appellee, in rebuttal, denied that he had any conversation with Sternberg in which he agreed upon a settlement and surrendered all his rights under his contract with the appellants. He received the letter, check, and statement referred to, and accepted the check and cashed the same. The settlement was such as appellants

had been making on estimates for amount of work completed, as the work progressed under the contract.

One witness testified that he had had experience in clearing rights-of-way, and was familiar with Improvement No. 59, and that the right-of-way could be cleared for $40 an acre. The witness never figured up what it was costing appellee, and didn't know what the cost of clearing was in Poinsett County.

Appellants requested the court to direct a verdict in their favor. The court refused to so instruct the jury, to which ruling appellants duly excepted. The appellee then asked the court to instruct the jury with regard to the uncompleted portion of the original Improvement No. 59. The appellants objected. The court ruled that it would instruct the jury on that theory, to which ruling the appellants excepted.

The court, on its own motion, gave, among others, the following instructions:

"10. Now then, gentlemen, the measure of damages, if, under the proof and the instructions, you find for the plaintiff, the measure of his damages will be the difference between the contract price and the cost of doing the clearing at the time he was required by the terms of the contract to do the clearing, and, in determining the damages, you are to take into consideration only that part of the Improvement 59 as it existed at the time of making the contract, and which remained uncleared at the time of the breach, if any.

"11. Now, gentlemen, there was considerable evidence here at the beginning of this lawsuit about the fact that the commissioners of Drainage District No. 7 had changed the plans of the district and had changed the Improvement No. 59, the one in controversy, from where it was at the time the contract was made to another point, a location, later on. Now, in order that you may not be confused over these issues, you are told now that you will disregard any proof that has been offered in regard to these changes, and you will confine your deliberations solely to the territory as it was embraced in the contract

at the time of its execution, and you won't consider any other proposition at all. The only territory you will consider at all is that that existed and had been laid off as No. 59 at the time this contract was entered into, and the change made by the commissioners afterwards would be a thing you gentlemen will have nothing to do with at all."

The appellants duly excepted to the giving of each of these instructions. The jury returned a verdict in favor of the appellee in the sum of $2,800. The appellants, in their motion for a new trial, among others, assigned the following grounds:

"2. The court erred in refusing to direct a verdict for the defendant at the close of all of the evidence.

"3. The court erred in permitting plaintiff to amend, or in considering plaintiff's complaint amended at the close of the evidence, and submitting the cause to the jury on a theory other than the one upon which the case was tried.

"10. The court erred in giving, of its own motion, its instruction numbered ten, over the objections of the defendant.

"11. The court erred in giving, of its own motion, its instruction numbered eleven, over the objections of the defendant."

The court overruled the motion for a new trial, and entered judgment in favor of the appellee against the appellants in the sum of $2,800, from which is this appeal.

1. The appellant's first assignment of error is that the court erred in refusing to direct a verdict in their favor. The appellants contend that, under the law creating Drainage District No. 7 of Poinsett County, Arkansas, and their contract with the appellee, the district had the right to change the plans of Improvement No. 59, and that such change of plans had the effect of abrogating the contract between the appellants and the appellee for the clearing of the right-of-way under the original plans and route of Improvement No. 59; that the change of these plans by the district had the effect to destroy the

subject-matter of appellee's contract with the appellants, and that therefore the district's obligation to the appellants under their contract to clear the right-of-way of Improvement No. 59 was at an end, and likewise the obligation of the appellants to the appellee was at an end.

Section 7 of act 193 of the Acts of 1917, creating Drainage District No. 7 of Poinsett County, of which Improvement No. 59 is a part, provides: "The board may at any time alter the plan of the ditches and drains, but so as not to change essentially the character of the work nor to increase its cost more than twenty-five per cent., but before constructing the ditches according to the changed plans. The changed plans, with accompanying specifications, showing the width and depth of the ditches as changed, shall be filed with the clerk, and notice of such filing shall be given by publication for one insertion in newspapers issued and having a *bona fide* circulation in said county."

The contract of appellants with the district contains this provision: "The board reserves the right to change the location of Improvement No. 59 about four miles west of the location as now planned."

Under the law and under the contract of appellants with the district for clearing the right-of-way of Improvement No. 59 according to the original plans and specifications of such improvement, the district had the right to alter those plans so long as such change was in conformity with the statute, but such alterations or change of plans and specifications did not have the effect of destroying the subject-matter of the contract between the appellants and the district and did not relieve the appellants of the obligation of such contract to the district. Nor did such change of plans by the district have the effect of relieving the appellants of their obligation to the appellee for the clearing of such right-of-way under the changed plans. The contract between the appellants and the appellee expressly provided that the "plans and specifications of Drainage District No. 7 of Poinsett County, Arkansas, pertaining to the right-of-way clear-

ing of such levee district, shall be made a part of this agreement as if hereto attached and herein recited.'' Now, under appellants' contract with the district for clearing the right-of-way of Improvement No. 59, the district had the right to change the location of the improvement from the route as then planned to a distance of four miles west. The district therefore had a right to alter the plans in conformity with the law and this provision of the contract and to compel the appellants, under their contract with the district, to do this work, and the change or alteration in the plans did not abrogate the contract of appellants with the district. Likewise, under the contract of the appellants with the appellee for clearing the right-of-way of Improvement No. 59, the appellee had to clear the right-of-way according to the plans and specifications of the district for the clearing of the right-of-way at the time such contract was executed between the district and the appellants, and if such plans and specifications were altered by the district, then the appellants were bound to clear the right-of-way in accordance with the altered plans, and likewise the appellee was bound, under his subcontract with the appellants, to clear the right-of-way in accordance with these altered plans.

It occurs to us therefore that the appellants are entirely mistaken in their contention here that the alteration of the plans by the district for the clearing of the right-of-way of Improvement No. 59 abrogated their contract with the district and also abrogated their contract with the appellee to clear the right-of-way according to the altered plans. If the appellants, after entering into the contract with the district, had insisted upon their right to perform the contract according to the altered plans and the district had refused to comply with the contract on its part, then the district would have been liable to the appellants for a breach of the contract. Likewise, if appellants had insisted upon the performance of the contract by the appellee according to the altered plans and appellee had refused to so perform the

contract, he would have been liable to appellants for a breach of contract. The obligations of these contracts are mutually binding on the parties. Therefore if the appellants, without the consent of the appellee, when the plans were altered by the district, treated their contract with the appellee as abandoned and entered into contracts with other parties for the clearing of the right-of-way according to the altered plans, by doing so they violated their contract with the appellee, and were liable for such damages as accrued to appellee by reason of such violation.

The contention of the appellants here that the alteration of the plans by the district had the effect of destroying the subject-matter of the contract between the district and the appellants, as well as the contract between the appellants and the appellee, is directly contrary to the position assumed by the appellants at the trial. For Sternberg testified that appellants did not need a new contract with the district, for the reason that the contract with the district provided for an alteration in the plans. If appellants' contract with the district provided for an alteration in the plans, and it did, it is equally true that appellants' contract with the appellee provided for an alteration in the plans, and if appellants had the right to insist upon the appellee performing his contract under these altered plans, likewise the appellee had the right to insist upon the appellants complying with their contract to allow him to do the work under the altered plans at the contract price. The alteration of the original plans or route for Improvement No. 59, as we have stated, was authorized under the law and under the contract between the appellants and the district, and such alteration did not have the effect of an abandonment of such improvement by the district. On the contrary, it was but carrying out the improvement as the law and contract with the appellants contemplated. Therefore the authorities upon which the appellants rely, to the effect that, in all contracts in which the performance depends on the continued existence of a given person or thing, a

condition is implied that the impossibility arising from the perishing of the person or thing shall excuse the performance, have no application to the facts of this record. Improvement No. 59 of Drainage District No. 7 of Poinsett County, Arkansas, is still in existence, although the plans of such improvement as first adopted by the district have been altered.

The issue as to whether or not there was an abandonment of the contract on the part of the appellee, or whether or not he acquiesced in an abandonment of the contract by the appellants, was one of fact for the jury, under the evidence, and the court correctly submitted this issue to the jury.

Likewise the issue as to whether or not there had been a complete settlement by the appellants with the appellee and an accord and satisfaction of the claim he now sets up, was one of fact for the jury under the evidence, and was also correctly submitted. The court therefore did not err in refusing to grant appellants' prayer for a directed verdict.

2. The court, however, did err in giving instructions Nos. 10 and 11 on its own motion. It occurs to us that these instructions ignored the issues raised by the pleadings, and they were certainly not responsive to the testimony adduced at the trial. If the appellee is entitled to recover at all under his complaint and the testimony adduced, he must recover on the theory set up in his complaint and in the testimony adduced to sustain such theory, and not upon the theory that appellants were liable to him because they would not allow him to make the Improvement No. 59 as it existed at the time the contract was entered into, and were therefore liable to him in damages under the contract price for the uncleared right-of-way, according to the original plans. Such an issue is wholly inconsistent with the cause of action set up in appellee's complaint and the evidence adduced by him to sustain it. Besides, under the law and his contract, no damages could be predicated upon an alteration of the original plans of the district, so long as such alterations

were according to the provision of § 7 of the act, *supra*, under which act the district was created.

For the errors indicated the judgment is reversed, and the cause remanded for a new trial.

McCulloch, C. J., and Smith, J., concur.